JOHN STARKEY, Respondent, v. CITY OF GREEN-VILLE, Appellant.

Springfield Court of Appeals, April 14, 1915.

1. **APPEAL AND ERROR: Verdict: Evidence.** In reviewing the evidence to ascertain if it is sufficient to sustain a verdict, the appellate court will consider same in the light most favorable to the party prevailing and will give him the benefit of every reasonable inference that can be drawn from same.

2. **STREETS: Duty of City to Keep Reasonably Safe for Travel.** A city owes to travelers along its streets the duty to use ordinary care to keep same reasonably safe for travel.

3. **MUNICIPAL CORPORATIONS: Defective Streets: Knowledge of Defects: Inferences.** Action by traveler for injuries because of defective street. Where the defect had existed for about three weeks, plaintiff is entitled to the inference that the officials of the city had knowledge of same.

4. ———: **Injuries to Horse: Rubbish in Street: When No Liability.** Action for damages against city of less than 1000 inhabitants because of injuries to a horse. The horse stepped on one end of a stick of wood which was in the street, thereby

causing the other end to fly up and strike and penetrate the body of the horse, causing its death. The city held not liable for negligence, because a reasonably prudent and careful man would not anticipate that such result would occur by reason of a stick being left in the street.

5. **NEGLIGENCE: Action for: Proof Necessary to Warrant Recovery.** To entitle a plaintiff to recover for a negligent act of another, he must show that the injury which he sustained is one that would probably result from such negligent act and that it is one which a reasonably prudent and intelligent person would anticipate as a natural and probable result.

6. **MUNICIPAL CORPORATIONS: Injuries: Liability: City's Duty.** A municipal corporation is not an insurer against accidents nor a guarantor of the safety of travelers on its streets.

7. ———: **Streets: Duty of City: Due Care.** While the standard of due care, or degree, remains the same regardless of the size of the municipality or whether when applied to a street that is much or little traveled, yet all the facts must be considered, including the amount of travel over the street, to determine what is due care.

8. ———: ———: **Obstacles in: Liability of City.** The mere fact that sticks and rubbish are in a street where they should not be, is not sufficient to fasten negligence on the city. It is necessary also that their very presence impresses a reasonably careful person with such danger.

Appeal from Wayne County Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED.

*V. V. Ing* for appellant.

(1) A municipality can be held for damages only in cases for its failure to use ordinary care to keep its streets in reasonably safe condition for the probable use in the ordinary way. 37 Cyc. 285-286; 28 Cyc. 1358. (2) It is only against danger which can be or ought to be anticipated in the exercise of reasonable care and prudence, that a municipality is bound to guard in keeping its streets in good condition. 28 Cyc.

1367; Bagley v. St. Louis, 149 Mo. 122. (3) The city is not liable for every accident that may occur in its streets. It is not an insurer of persons or animals against all obstructions or defects that may be in its streets, and is not required to do everything that human ingenuity can do to prevent injury to persons or animals. Its duty is to exercise ordinary care to keep its streets reasonably safe for use in the usual modes, and by persons who themselves in using the streets in the usual way exercise ordinary care in using. 28 Cyc. 1359; Coffee v. Carthage, 186 Mo. 573; Welch v. St. Louis, 73 Mo. 71; Reed v. Mexico, 101 Mo. App. 155. (4) A person who drives a team along a public street which he knows has a defect or obstruction in it must look out for the same; and where in broad daylight he drives into or against or over the defect or obstruction and he or his team or vehicle is injured thereby, although his attention may not have been drawn to the defect or obstruction at the time, he cannot recover. Welch v. McGowan et al., 172 S. W. 18; Heselbach v. St. Louis, 179 Mo. 505.

*Munger & Wise* for respondent.

(1) A citizen may proceed on his way upon the highway with the assurance that it is reasonably safe and is not required to anticipate the wrongful act in obstructing it. O'Connor v. Railroad, 94 Mo. 156; Sullivan v. Railroad, 23 S. W. 149; Gerdes v. Iron Foundry Co., 124 Mo. 347. (2) Municipal corporations are bound to keep their streets and highways in a proper state of repair and free from obstructions, so that they will be reasonably safe for travel; and if, having notice of defects or obstructions, they neglect to repair or remove them, they will be liable for all injuries, provided that he who receives the injury was himself at the time in the exercise of due care. Smith v. St. Joseph, 45 Mo. 449; Flynn v. Neosho, 114 Mo. 573.

FARRINGTON, J.—The plaintiff recovered a
judgment for $175 as damages for the death of his
horse caused by an injury received on Race street, a
thoroughfare within the limits and under the control
of the defendant, a city of the fourth class having a
population of a little less than one thousand accord-
ing to the government census reports of 1910.

The petition contained the following allegation:
"Plaintiff further states that the defendant city
through its officers and employees on the third day
of February, 1914, and for a long time prior thereto
negligently and carelessly permitted said street along
and near the property of this plaintiff to become in-
fested, burdened and covered with planks, sticks, tim-
ber and other debris to such an extent that it became
dangerous to travel both by pedestrians and horses,
and that this defendant had full and complete knowl-
edge of the accumulation of the timber, boards, planks
and sticks which had from time to time for many
months accumulated in said street and that it negli-
gently failed and refused to remove such danger from
said street until after the third day of February, 1914."
This is followed by an allegation of ownership of the
horse, and that on the third day of February, 1914,
while driving on said street along and adjoining plain-
tiff's property and while turning from said street to
go into his lot, his horse stepped on the end of an oak
stick which was sharp at one end and which was about
four feet long and probably an inch or an inch and a
quarter in diameter, causing the other end to fly up to
and against the belly of the horse near his flank pene-
trating the body several inches and resulting in his
death.

The answer was a general denial coupled with a
plea of contributory negligence.

Over the objection and exception of the defendant
the case was submitted to the jury on instructions

predicating liability for negligence on the part of the defendant under the facts proven.

In view of the fact that we find that the evidence falls short of making out a case of negligence on the part of the city it is but fair to the respondent that we set forth the facts in their most favorable aspect to him, aided by every reasonable inference that can be drawn therefrom to sustain his judgment.

That plaintiff's horse was killed as alleged and that at the time of the injury plaintiff was in the lawful use of the highway is admitted. That the defendant city owed him the duty to use ordinary care in keeping the street reasonably safe for travel cannot be denied.

The evidence shows that at times when the street was muddy, planks and sticks would be thrown in and across the same by persons desiring to cross, and that much rubbish, trash and many planks and sticks were in the roadway and street and had been for some time, and that the city had not removed or cleared away such obstructions. It is also shown that the four-foot stick that did the damage had been in the street where the injury occurred for about three weeks before it happened. While it is not true that any of the city officials had actual knowledge of the condition of this street, still from the length of time that this and other sticks remained in the street at this place plaintiff is entitled to the inference that they had knowledge of such condition.

To make the issue plain: Can a city of less than one thousand inhabitants be held liable for negligently injuring plaintiff's horse in the manner shown if its officers and agents intrusted with the duty of keeping the street in reasonably safe repair for travel actually saw a stick some four feet long, sharp at one end, of about an inch or an inch and a quarter in diameter, in the roadway, where the surface of the street was earth and along which there was ordinary travel by wagons

and other vehicles including log and lumber and tie wagons? In other words, would a reasonably prudent, careful and intelligent person anticipate any danger to horses being driven along and over such street by failing to remove such stick? We answer, no, and hold that the answer is one about which reasonable men cannot differ.

It is a well-established rule of law which applies to cases of this character—and it is expressed by this court in the case of Wilt v. Coughlin, 176 Mo. App. 275, 161 S. W. 888—that in order for a plaintiff to recover for a negligent act he must show that the injury which he sustained is one that would probably flow from such negligent act and that it is one which a reasonably prudent·and intelligent person would anticipate as a natural and probable result. And in the Wilt case a number of leading cases on the subject are cited. [See, also, 1 Thompson, Commentaries on the Law of Negligence, sec. 50; 29 Cyc. 492 to 495; 1 Shearman & Redfield on Law of Negligence (6 Ed.), secs. 28 and 29.]

As applied to actions for negligence of this character against municipal corporations, Dillon in volume 4 of the fifth edition of his work on Municipal Corporations, section 1706, expresses the rule as follows: "They are under no obligation to provide for everything that *may* happen upon them, but only for such things as ordinarily exist or such as may reasonably be expected to occur."

2 Elliott on Roads and Street (3 Ed.), section 793, limits the liability to the exercise of ordinary care and exempts the city as an insurer.

In 6 McQuillin on Municipal Corporations, section 2726, the rule is thus stated: "In brief, the municipality is never an *insurer against accidents,* nor a *guarantor* of the safety of travelers on its streets." [See, also, 28 Cyc. 1366, 1367.]

Webb's Pollock on Torts at page 45 logically puts it as follows: "Now a reasonable man can be guided

only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability.'' [See, also, Ray on Negligence of Imposed Duties, pp. 133-134, cited in Weesen v. Railroad, 175 Mo. App. 380, 162 S. W. 304; Schaeffer v. Jackson Township, 150 Pa. St. 145, 30 Am. St. 792, 794; Wilson v. Town of Granby, 47 Conn. 59, 36 Am. St. 51; McGrew v. Stone, 53 Pa. St. 436.]

6 McQuillin on Municipal Corporations, section 2726, in discussing the rule in this connection uses the following language: ''And inasmuch as municipalities are liable for injuries upon highways only when negligent in regard to the condition of the way, the mere fact that an injury happened, from a condition which reasonable men in general would not consider unsafe, is not enough to create a liability. A plaintiff must show, in order to recover, not that an injury has happened which no one would have anticipated, but that there were conditions such that the authorities, in the exercise of proper care, ought to have realized that there was danger of an injury, and to have taken precautions to prevent it.''

The rule that the duty of the city to exercise reasonable care is an absolute one refers to the liability when one exists; the absoluteness does not refer to the

cause of liability but only to the liability when it is established; it does not mean that the state of the street must be perfect. [Chapman v. Milton, 31 W. Va. 384, 7 S. E. 22; Gibson v. City of Huntington, 38 W. Va. 177, 18 S. E. 447; Yeager v. City of Bluefield (W. Va.), 21 S. E. 752.]

A distinction should be borne in mind in measuring the duty which a city owes to the traveling public; the standard of due care remains the same regardless of the size of the municipality, or whether when applied to a street on which there is much travel or one on which there is little; but in determining what is due care, all the facts, circumstances and surroundings must be kept in mind, and one of these circumstances is the amount of use to which the street is subjected. 6 McQuillin on Municipal Corporations, sec. 2726, pp. 5604-5605, recognizes this distinction in this language: ". . . but a greater *amount* (not *degree*) of care is required as to driveways and sidewalks in populous and much traveled parts of the municipality than with reference to such ways in parts of the municipality where the way is used less frequently." And that a distinction should be made is declared in the case of Miller v. Town of Canton, 112 Mo. App. 322, 87 S. W. 96. [See, also, Shreve v. City of Ft. Wayne (Ind.), 96 N. E. 9.]

The case nearest in point that we have been able to find is that of McKone v. Village of Warsaw (N. Y.), 80 N. E. 212, where a horse was injured by stepping on a loose stone left with some others in the street of the defendant village, and the following statements appearing in the opinion in that case seem to us to express the law that is applicable here: "The idea of the measure of responsibility of a municipal corporation for accidents happening upon its streets and highways is not to be divorced from reason. Such a country road must not be expected to be ever free from loose stones, and, because the possibility exists that horses

may fall upon it, is the village to be held to so extensive a liability? And shall jurors be permitted to guess that an accident was due to the fault of the way and not to that of driver, or horse? The duty enjoined by statute to remove loose stones from the highways, and, generally, to keep highways in repair, as an obli- gation, is one which, in the imposition of duties and in the delegation of powers by the Legislature with respect to the public highways, is to be deemed for the benefit of the public generally, rather than as 'affecting a local, or corporate, interest.' The rule of municipal liability, when invoked upon the proof of a neglect of duty with respect to a highway, is not an absolute one. On the contrary, as it was pointed out in the case of Lane v. Town of Hancock, 142 N. Y. 521, 37 N. E. 476, upon authority, 'the limit of duty on the part of a town with regard to the condition of its highways falls far short of making them absolutely safe, under all cir- cumstances, even for those who use them properly.' Whether such an accident as the one in question ever happened before on Buffalo Road, we are not informed by the record, but, if we could say that it is one the possibility of which might have suggested itself, nev- ertheless, for the court to hold the municipality respon- sible for its occurrence, would be to make of it an in- surer against accidents as to all persons using the way. In my opinion, the evidence disclosed no actionable negligence and therefore it was error for the court to submit the case to the jury." [See, also: Glasier v. Town of Hebron (N. Y.), 30 N. E. 239; Lane v. Town of Hancock, 142 N. Y. 521, 37 N. E. 476.]

The plaintiff must show that an ordinarily prudent and careful person would have realized that this stick left in the street was a dangerous obstruction or mis- sile. It is not enough to show that an accident did hap- pen and that such an accident was in the realm of possibility, but that a danger existed within the realm of probability. [Cammett v. City of Haverhill (Mass.),

83 N. E. 331; 6 McQuillin on Municipal Corporations, sec. 2767, p. 5656.]

By a divided court it was held that for an injury that a horse received by stepping on a loose stone in the street there could be no recovery. [McCool v. City of Grand Rapids, 58 Mich. 41, 55 Am. St. 655—in which it will be noted that Judge Cooley voted no liability; see, also, Hubbell v. City of Yonkers (N. Y.), 10 N. E. 858, 860.]

The mere fact that sticks and rubbish are in a street where they should not be is not sufficient to fasten negligence on the city. They must not only be there, but their very presence must carry the idea of danger to the extent of awakening such idea in the mind of a reasonably careful person. [Badgley v. City of St. Louis, 149 Mo. 122, 50 S. W. 817.]

In 5 Thompson's Commentaries on the Law of Negligence, under sections 6022, 6023 and 6024, will be found collected a number of cases where the obstruction or defect in the street has been held actionable, as well as many others holding that no liability existed. In a great many of the cases in the former class the facts will at once raise a doubtful question as to whether or not danger would be reasonably anticipated, and of course under such facts the court must submit the issue to the jury. There are others that we think have placed the burden of an insurer upon municipalities; and we agree with the note under section 804, on page 216, of 2 Elliott on Roads and Streets (3 Ed.), which is as follows: "It seems to us that some of the courts carry the doctrine which is involved in the general class of cases to which we have referred to a greater length than sound principle sustains and that there is reason for restricting the doctrine."

Almost any conceivable missile or object that we see may of course become dangerous if certain forces of nature are applied to it. The question then is, will such force in the ordinary course of events be applied?

Can a dangerous result of force and missile be reasonably anticipated? If so, the obstacle becomes negligently dangerous in law. If not, there is no negligence in law.

Keeping these well-known rules in mind, we hold that no reasonably careful person would have anticipated any danger of such an injury as happened to plaintiff's horse when driven along and over this street. And keeping in mind what we conceive to be "horse sense," and the every-day experience of those who own or drive horses and who care for them in the ordinary way, we know that in rural districts and in small towns and villages, on streets and roads, in barn lots and on the commons, ordinarily prudent keepers and users of horses subject them to just such conditions and hazards as existed here, and never does it occur to them that they are treating their stock in a dangerous way.

The cause of action in this case failed and the judgment must be reversed. *Robertson, P. J.,* and *Sturgis, J.,* concur.